UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE: | |
| UNIVERSITY DIRECTORIES, LLC | CASE NO. 14 - 81184 |
| PRINT SHOP MANAGEMENT, LLC | CASE NO. 14 - 81180 |
| VILCOM, LLC | CASE NO. 14 - 81177 |
| VILCOM INTERACTIVE MEDIA, LLC | CASE NO. 14 - 81181 |
| VILCOM PROPERTIES, LLC | CASE NO. 14 - 81179 |
| VILCOM REAL ESTATE DEVELOPMENT (VRD), LLC | CASE NO. 14 - 81182 |
| DEBTORS. | CHAPTER 11 |
| Joint Motion For Authority To Use Cash Collateral | |

NOW COME University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC ("VIM"), Vilcom Properties, LLC ("VP") and Vilcom Real Estate Development (VRD), LLC ("VRD," and collectively, the "Debtors"), and move the Court pursuant to §363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure as follows:

1. On October 24, 2014 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code and Orders for relief were entered in each case. The Debtors continue in possession of their respective assets and operate their respective businesses as debtors-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

**University Directories, LLC**

3.      UD is a collegiate marketing and media company located in Chapel Hill, North Carolina and doing business as The AroundCampus Group.

4.      In connection with its business operations, UD executed the following documents (the "UD Loan Documents") in favor of Harrington Bank, FSB ("Harrington Bank"):

      a.      Business Loan Agreement dated February 14, 2008.

      b.      Promissory Note dated February 14, 2008 in the original principal amount of $300,000.

      c.      Promissory Note dated May 9, 2012 in the original principal amount of $365,565.16.

      d.      Business Loan Agreement dated December 17, 2013.

      e.      Promissory Note dated December 17, 2013 in the original principal amount of $1,000,000.00.

      f.      Business Loan Agreement dated December 17, 2013.

      g.      Promissory Note dated December 17, 2013 in the original principal amount of $572,000.

      h.      Commercial Security Agreement dated December 17, 2013.

      i.      Loan Modification Agreement dated March 12, 2014.

      j.      Harrington Bank also filed in the office of the North Carolina Secretary of State a UCC Financing Statement dated December 20, 2010.

5.      Pursuant to the UD Loan Documents, the outstanding indebtedness is secured by substantially all assets of UD, including inventory, equipment, accounts and general intangibles.

6.      Upon information and belief, on or before October 15, 2014, the UD Loan Documents were assigned to UDX, LLC, a North Carolina limited liability company ("UDX").

7.      CIT Finance, LLC ("CIT") and UD are parties to a computer software and equipment lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest CIT filed a UCC Financing Statement with the North Carolina Secretary of State.

8.      EverBank Commercial Finance, Inc. ("Everbank") and UD are parties to a computer software and equipment lease with a purchase option for a nominal sum, thereby rendering such

lease a security agreement, and to perfect such security interest Everbank filed a UCC Financing Statement with the North Carolina Secretary of State.

9. Key Equipment Finance, Inc. ("Key") and UD are parties to a computer software and equipment lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest Key filed a UCC Financing Statement with the North Carolina Secretary of State.

10. LEAF Capital Funding, LLC ("LEAF") and UD are parties to a computer software lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest Everbank filed a UCC Financing Statement with the North Carolina Secretary of State.

11. US Bank Equipment Finance ("US Bank") and UD are parties to a computer software and equipment lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest US Bank filed a UCC Financing Statement with the North Carolina Secretary of State.

12. As of the Petition Date, UD is not aware of any other liens or security interests against the property owned by UD.

**Print Shop Management, LLC**

13. Print Shop is located in Chapel Hill, North Carolina and provides printing, custom framing, drymounting and other related services to customers.

14. On February 14, 2008, Print Shop executed a Commercial Security Agreement in favor of Harrington Bank to secure the present and future indebtedness of UD to Harrington Bank, and Harrington Bank filed a UCC Financing Statement in the office of the North Carolina Secretary of State dated December 20, 2010 (collectively, the "Print Shop Loan Documents")

15. Upon information and belief, on or before October 15, 2014, the Print Shop Loan Documents were assigned to UDX.

16. Pursuant to the Print Shop Loan Documents, UDX has a first priority security interest in substantially all assets of the Print Shop, including inventory, equipment, accounts and general intangibles.

17. As of the Petition Date, the Debtor is not aware of any other liens or security interests against the property owned by Print Shop.

**Vilcom, VIM, VP**

18. Vilcom is a guarantor on the Harrington Bank loans acquired by UDX, which are secured by a blanket lien upon the inventory, equipment, accounts and general intangibles of Vilcom.

19. VIM is a guarantor on the Harrington Bank loans acquired by UDX, which are secured by a blanket lien upon the inventory, equipment, accounts and general intangibles of VIM.

20. Vilcom and Edward S. Holmes also hold a security interest in the inventory, equipment, accounts and general intangibles of VIM.

21. VP is a guarantor on the Harrington Bank loans acquired by UDX, but none of its assets are subject to a security interest in favor of UDX.

**Vilcom Real Estate Development (VRD), LLC**

22. VRD owns residential real properties located at (i) 740 Gimghoul Road, Chapel Hill, North Carolina ("Gimghoul") and (ii) 15 Seaside Sparrow Road, Hilton Head, South Carolina ("HHI").

*Harrington-UDX loans and liens*

23. VRD and/or Heavner executed the following documents (the "VRD Loan Documents") in favor of Harrington Bank:

    a. Promissory Note dated September 17, 2010, in the original principal amount of $3,500,000.

    b. Construction Deed of Trust dated August 17, 2006 securing the Promissory Note, which is a first lien on Gimghoul.

    c. Business Loan Agreement dated September 17, 2010.

    d. Loan Extension Agreement dated December 17, 2013.

    e. Mortgage dated December 17, 2013 securing the UD Loans up to a maximum of $1,000,000, which is a fourth lien on HHI.

24. Upon information and belief, on or before October 14, 2014, the VRD Loan Documents were assigned to Southland National Insurance Corporation, and on October 21, 2014 the VRD Loan Documents were further assigned by Southland National Insurance Corporation to UDX.

*Wells Fargo loans and liens*

25. Heavner, UD and/or VRD executed the following documents (the "Wells Fargo Loan Documents") in favor of Well Fargo Bank, N.A.:

a. Promissory note dated January 22, 2003, in the original principal amount of $1,000,000.

b. Mortgage dated January 22, 2003 securing the $1,000,000 note, which is a first lien on HHI.

c. Prime Equity Line of Credit Agreement dated December 8, 2006, in the maximum amount of $1,500,000.

d. Home Equity Line of Credit Mortgage dated December 8, 2006 securing the $1,500,000 line of credit, which is a second lien on HHI.

e. Amended and Restated Term Note dated March 12, 2013, in the original principal amount of $1,838,352.72.

f. Mortgage and Assignment of Rents and Leases dated April 3, 2008, as modified by the Second Modification dated March 12, 2013, securing the $1,838,352.72 note, as modified by the Second Modification dated March 12, 2013 which is a third lien on HHI.

g. Deed of Trust dated November 29, 2010 securing the $1,838,352.72 note, as modified by the Second Modification dated March 12, 2013, which is a second lien on Gimghoul.

26. The Debtors have filed a "Motion (1) to Approve Private Sale of Real Property at 15 Seaside Sparrow Road, Hilton Head, South Carolina and (2) Transfer Liens to Proceeds" (the "Sale Motion") in which the Debtors seek authority to sell HHI pursuant to an existing contract, (i) pay the brokers' commission, closing costs, (ii) pay in full the three loans held by Wells Fargo which are secured by senior liens on HHI, and (iii) transfer the junior lien held by UDX to the remaining sale proceeds, which shall be held subject to further Order of the Court.

27. On October 23, counsel for UDX provided a payoff statement of all the loans held by UDX, summarized as follows:

| VRD Note | $3,388,162.88 |
|---|---|
| UD Note 19653 | $183,576.32 |
| UD Note 31250 | $888,948.57 |
| UD Note24730 | $235,193.47 |
| UD Note16691 | $573,711.64 |
| Legal Fees | $50,000.00 |
| Other Fees & Charges | $207,500.00 |

5

| Total | $5,527,092.89 |
|---|---|

28.     The VRD Note with an asserted balance of $3,388,162.88 is secured by (i) Gimghoul, which was appraised in July 2014 at $4,875,000 but is presently listed for sale at $3,900,000. No sale motion for Gimghoul is pending, so no request is being made at this time for the use of sale proceeds arising from such collateral.

29.     The UD Notes held by UDX with an asserted balance of $2,138,930.01 (including legal fees, other fees and costs) are secured by the following assets having an aggregate value of approximately $3,670,000:

>    a.      A blanket lien on the UD, VIM, Vilcom and Print Shop assets, including accounts receivable which collectively have been scheduled as having an aggregate value net of allowance for bad debt of approximately $2,570,000.
>
>    b.      A junior mortgage on HHI, which is expected to generate approximately $825,000 arising from the sale of such property.
>
>    c.      A junior mortgage on Gimghoul, which appears to have a net value of approximately $275,000 assuming Gimghoul is sold at the current listing price (rather than at the appraised value), less a 6% broker's commission and payment of the first mortgage held by UDX.

30.     As set forth in the Sale Motion, the obligations held by UDX and evidenced by the UD Loans and the VRD Loan are the subject of bona fide dispute, and the Debtors reserve for themselves, any Committee of Unsecured Creditors subsequently created, and any trustee subsequently appointed in any of these Chapter 11 proceedings or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtors' property, or the rents, profits and income generated therefrom.

31.     The Debtors are dependent upon use of the cash collateral to pay on-going costs of operating the business and insuring, preserving, repairing and protecting all the properties, and thus have an immediate need for the use of cash collateral. If not permitted to use the cash collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the business will be lost, and the fair market value of the properties will be significantly

6

reduced, resulting in financial loss to all parties in interest. To that end, the Debtors request the Court to authorize the use of cash collateral as set forth herein.

32. An order substantially in the form attached granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of UDX, as (i) UDX would continue to maintain the existing liens on all its existing collateral and on replacement collateral as set forth below, and (ii) the use of cash collateral would preserve the value of the estates for the benefit of UDX and all other creditors.

33. The Debtors offer to provide UDX with adequate protection by:

    a. Limiting the use of cash collateral as generally projected in a Budget to be attached to the Interim Order as Exhibit A, or as may otherwise be approved by UDX or by the Court after further notice and hearing.

    b. Providing UDX with a continuing post-petition lien and security interest in all property and categories of property of the Debtors in which and of the same priority as said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-petition Collateral"), equivalent to a lien granted under §§ 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of cash collateral used. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation.

    c. Providing UDX and the Bankruptcy Administrator with financial reports for the Debtors in form and frequency reasonably acceptable to UDX and the Bankruptcy Administrator.

34. The Debtors seek authority to use cash collateral through and including the effective date of a confirmed plan of reorganization or liquidation, a sale of substantially all assets of the estates, or the conversion of these cases to Chapter 7, whichever may first occur; provided, however, without further notice and hearing the Debtors may not use cash collateral for any purpose other than (i) operations in the ordinary course of business, (ii) adequate protection payments to secured creditors, (iii) monthly payments on executory contracts or leases, or (iv) payment of allowed administrative fees, costs, or expenses.

35. Notwithstanding any suspension or termination of the right to use Cash Collateral as set forth above (a "Termination Date"), the Debtors shall be permitted to carve out from Cash Collateral or any replacement collateral and use an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Termination Date, the following expenses to the extent incurred post-petition and prior to such Termination Date but in the aggregate amount not to exceed one hundred fifteen percent (115%) of the aggregate expenditures set forth in the Budget through such Termination Date:

    a. The costs of operating and preserving the estate.

    b. Quarterly fees pursuant to 28 U.S.C. § 1930(a)(7).

    c. Professional fees and expenses (including expert witness fees and expenses) for professionals for the Debtors after application of any prepetition retainers, and for professionals for the Committee if one is duly formed, after any prepetition retainers have been exhausted.

36. The Debtors propose that to the extent UDX has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which cash collateral is being used, then said creditor may, upon five (5) days' notice to the Debtors and the Bankruptcy Administrator and opportunity to cure, on an expedited basis: (i) seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or (ii) seek an Order terminating further authority to use cash collateral altogether.

37. The Debtors seek the consent of UDX to the use of cash collateral for the limited purposes set forth in this Motion. In the absence of such consent, if not forthcoming, the Debtors ask the Court to authorize such use and to provide adequate protection to such creditor to the extent the use of cash collateral impairs such creditor's interest, in a manner and to the extent to be determined by the Court at the hearing on this Motion.

    Wherefore, the Debtors pray the Court for the following relief:

1. That an interim order in the form attached hereto be entered by this Court after notice and interim hearing (i) authorizing the Debtors to use cash collateral on a consolidated basis in an amount to be determined at the interim hearing based upon the budget attached to the proposed Interim Order, and (ii) providing UDX with adequate protection as set forth herein.

2. That a final hearing be held regarding this motion, the interim order, and the Debtors' request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3. Such other relief as the Court may deem necessary and proper.

RESPECTFULLY submitted on behalf of the Debtors, this the 24th day of October, 2014.

/s/ John A. Northen

Counsel for the Debtors:
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

Exhibit A, Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

| | |
|---|---|
| **IN RE:** | |
| **UNIVERSITY DIRECTORIES, LLC** | **CASE NO. 14 - 81184** |
| **PRINT SHOP MANAGEMENT, LLC** | **CASE NO. 14 - 81180** |
| **VILCOM, LLC** | **CASE NO. 14 - 81177** |
| **VILCOM INTERACTIVE MEDIA, LLC** | **CASE NO. 14 - 81181** |
| **VILCOM PROPERTIES, LLC** | **CASE NO. 14 - 81179** |
| **VILCOM REAL ESTATE DEVELOPMENT (VRD), LLC** | **CASE NO. 14 - 81182** |
| **DEBTORS.** | **CHAPTER 11** |
| **Joint Motion For Authority To Use Cash Collateral** ||

This matter came before the Court after due notice for hearing on October 28, 2014 to consider the Joint Motion For Authority To Use Cash Collateral (the "Motion") filed by University Directories, LLC ("UD"), Print Shop Management, LLC ("Print Shop"), Vilcom, LLC ("Vilcom"), Vilcom Interactive Media, LLC ("VIM"), Vilcom Properties, LLC ("VP") and Vilcom Real Estate Development (VRD), LLC ("VRD," and collectively, the "Debtors"), pursuant to §363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

11

After due consideration of the evidence presented, the record in this case, and the comments of parties wishing to be heard, it appears to the Court that the terms and conditions set forth below are reasonable and appropriate, are in the best interests of the bankruptcy estate and all creditors, and should be approved, and the Court makes the following findings, conclusions and orders:

38. On October 24, 2014 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code and Orders for relief were entered in each case. The Debtors continue in possession of their respective assets and operate their respective businesses as debtors-in-possession.

39. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

40. In connection with its business operations, UD executed certain documents as set forth in the Motion (the "UD Loan Documents") in favor of Harrington Bank, FSB ("Harrington Bank"). The Debtors believe that on or before October 15, 2014, the UD Loan Documents were assigned to UDX, LLC, a North Carolina limited liability company ("UDX"). UDX asserts that it is owed approximately $2,138,930.01 (including legal fees, other fees and costs) as of October 23, 2014, secured by substantially all assets of UD, including inventory, equipment, accounts and general intangibles.

41. CIT Finance, LLC ("CIT") and UD are parties to a computer software and equipment lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest CIT filed a UCC Financing Statement with the North Carolina Secretary of State.

42. EverBank Commercial Finance, Inc. ("Everbank") and UD are parties to a computer software and equipment lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest Everbank filed a UCC Financing Statement with the North Carolina Secretary of State.

43. Key Equipment Finance, Inc. ("Key") and UD are parties to a computer software and equipment lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest Key filed a UCC Financing Statement with the North Carolina Secretary of State.

44.     LEAF Capital Funding, LLC ("LEAF") and UD are parties to a computer software lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest Everbank filed a UCC Financing Statement with the North Carolina Secretary of State.

45.     US Bank Equipment Finance ("US Bank") and UD are parties to a computer software and equipment lease with a purchase option for a nominal sum, thereby rendering such lease a security agreement, and to perfect such security interest US Bank filed a UCC Financing Statement with the North Carolina Secretary of State.

46.     As of the Petition Date, UD is not aware of any other liens or security interests against the property owned by UD.

47.     On February 14, 2008, Print Shop executed a Commercial Security Agreement in favor of Harrington Bank to secure the present and future indebtedness of UD to Harrington Bank, and Harrington Bank filed a UCC Financing Statement in the office of the North Carolina Secretary of State dated December 20, 2010 (collectively, the "Print Shop Loan Documents")

48.     The Debtor believes that on or before October 15, 2014, the Print Shop Loan Documents were assigned to UDX.  Pursuant to the Print Shop Loan Documents, UDX has a first priority security interest in substantially all assets of the Print Shop, including inventory, equipment, accounts and general intangibles.

49.     As of the Petition Date, the Debtor is not aware of any other liens or security interests against the property owned by Print Shop.

50.     Vilcom is a guarantor on the Harrington Bank loans acquired by UDX, which are secured by a blanket lien upon the inventory, equipment, accounts and general intangibles of Vilcom.

51.     VIM is a guarantor on the Harrington Bank loans acquired by UDX, which are secured by a blanket lien upon the inventory, equipment, accounts and general intangibles of VIM,

52.     Vilcom and Edward S. Holmes also hold a security interest in the inventory, equipment, accounts and general intangibles of VIM.

53.     VP is a guarantor on the Harrington Bank loans acquired by UDX, but none of its assets are subject to a security interest in favor of UDX.

54.     VRD owns residential real properties located at (i) 740 Gimghoul Road, Chapel Hill, North Carolina ("Gimghoul") and (ii) 15 Seaside Sparrow Road, Hilton Head, South Carolina ("HHI").

55.     VRD and/or Heavner executed certain documents as set forth in the Motion (the "VRD Loan Documents") in favor of Harrington Bank. The Debtor believes that on or before October 14, 2014, the VRD Loan Documents were assigned to Southland National Insurance Corporation, and on October 21, 2014 the VRD Loan Documents were further assigned by Southland National Insurance Corporation to UDX.

56.     Heavner, UD and/or VRD executed certain documents as set forth in the Motion (the "Wells Fargo Loan Documents") in favor of Well Fargo Bank, N.A.

57.     The Debtors have filed a "Motion (1) to Approve Private Sale of Real Property at 15 Seaside Sparrow Road, Hilton Head, South Carolina and (2) Transfer Liens to Proceeds" (the "Sale Motion") in which the Debtors seek authority to sell HHI pursuant to an existing contract, (i) pay the brokers' commission, closing costs, (ii) pay in full the three loans held by Wells Fargo which are secured by senior liens on HHI, and (iii) transfer the junior lien held by UDX to the remaining sale proceeds, which shall be held subject to further Order of the Court.

58.     On October 23, counsel for UDX provided a payoff statement of all the loans held by UDX, summarized as follows:

| VRD Note | $3,388,162.88 |
| UD Note 19653 | $183,576.32 |
| UD Note 31250 | $888,948.57 |
| UD Note24730 | $235,193.47 |
| UD Note16691 | $573,711.64 |
| Legal Fees | $50,000.00 |
| Other Fees & Charges | $207,500.00 |
| Total | $5,527,092.89 |

59.     The VRD Note with an asserted balance of $3,388,162.88 is secured by (i) Gimghoul, which the Debtors report was valued by appraisal in July 2014 at $4,875,000 but is presently listed for sale at $3,900,000. No sale motion for Gimghoul is pending, so no request has been made at this time for the use of sale proceeds arising from such collateral.

60.     The UD Notes held by UDX with an asserted balance of $2,138,930.01 (including legal fees, other fees and costs) are secured by the following assets which the Debtors contend have an aggregate value of approximately $3,670,000:

14

a. A blanket lien on the UD assets, including accounts receivable which have been scheduled by UD as having an aggregate value net of allowance for bad debt of approximately $2,570,000.

b. A junior mortgage on HHI, which according to the Sale Motion is expected to generate approximately $825,000 arising from the sale of such property.

c. A junior mortgage on Gimghoul, which the Debtor contends has a net value of approximately $275,000 assuming Gimghoul is sold at the current listing price (rather than at the appraised value), less a 6% broker's commission and payment of the first mortgage held by UDX.

61. As set forth in the Sale Motion, the obligations held by UDX and evidenced by the UD Loans and the VRD Loan are the subject of bona fide dispute, and the Debtors have reserved for themselves, any Committee of Unsecured Creditors subsequently created, and any trustee subsequently appointed in any of these Chapter 11 proceedings or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtors' property, or the rents, profits and income generated therefrom.

62. The Debtors are dependent upon use of the cash collateral to pay on-going costs of operating the business and insuring, preserving, repairing and protecting all the properties, and thus have an immediate need for the use of cash collateral. If not permitted to use the cash collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the businesses will be lost, and the fair market value of the properties will be significantly reduced, resulting in financial loss to all parties in interest. To that end, the Debtors have requested that the Court authorize the use of cash collateral as set forth herein.

63. An order substantially in the form attached granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of UDX, as (i) UDX would continue to maintain the existing liens on all its existing collateral and on replacement collateral as set forth below, and (ii) the use of cash collateral would preserve the value of the estates for the benefit of UDX and all other creditors. The terms, conditions and limitations of this Order are reasonably tailored to protect the interests of all creditors in these bankruptcy cases.

15

Based upon the foregoing, the Court concludes that interim use of Cash Collateral is necessary and that an Order granting interim relief, followed by a further or final hearing upon due notice, would not prejudice the rights of the Lenders, and for good and sufficient reasons appearing it is hereby ORDERED as follows:

1. Subject to the terms and conditions contained in this Order, the Debtors may use cash collateral in accordance with Section 363 on an interim basis and for the period through and including November __, 2014 (the "Expiration Date"), in an aggregate amount not to exceed $_____, for the purposes and subject to the sub-limits as set forth in the budget for such period, not to exceed 115% on a line-item cumulative basis, pending further orders of the Court after notice and hearing. A copy of the budget is attached hereto as **Exhibit A.**

2. As adequate protection for the use of cash collateral:

    a. UDX shall have a continuing post-petition lien and security interest in all property and categories of property of the Debtors in which and of the same priority as said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-petition Collateral"), equivalent to a lien granted under §§ 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of cash collateral used. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation.

    b. UDX and the Bankruptcy Administrator shall be provided financial reports for the Debtors in form and frequency reasonably acceptable to UDX and the Bankruptcy Administrator.

    c. The Debtors, without further notice and hearing, may not use cash collateral for any purpose other than (i) operations in the ordinary course of business, (ii) adequate protection payments to secured creditors, (iii) monthly payments on executory contracts or leases, or (iv) payment of allowed administrative fees, costs, or expenses.

3. Notwithstanding any suspension or termination of the right to use Cash Collateral as set forth above (a "Termination Date"), the Debtors shall be permitted to carve out from Cash Collateral or any replacement collateral and use an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall

mean, on the Termination Date, the following expenses to the extent incurred post-petition and prior to such Termination Date but in the aggregate amount not to exceed one hundred fifteen percent (115%) of the aggregate expenditures set forth in the Budget through such Termination Date:

    a.    The costs of operating and preserving the estate.

    b.    Quarterly fees pursuant to 28 U.S.C. § 1930(a)(7).

    c.    Professional fees and expenses (including expert witness fees and expenses) for professionals for the Debtors after application of any prepetition retainers, and for professionals for the Committee if one is duly formed, after any prepetition retainers have been exhausted.

4. To the extent UDX has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which cash collateral is being used, then said creditor may, upon five (5) days' notice to the Debtors and the Bankruptcy Administrator and opportunity to cure, on an expedited basis: (i) seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or (ii) seek an Order terminating further authority to use cash collateral altogether.

5. The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of UDX in the Cash Collateral. Nothing in this Order shall waive any rights of any creditor unless expressly provided for herein, including but not limited to the right to assert any claim pursuant to Section 507(b) of the Bankruptcy Code with priority over all other expenses of administration in this case and any ensuing Chapter 7 case.

6. This Order shall remain in full force and effect until the earlier of the (a) entry of an Order by the Court modifying the terms of this Order, or (b) entry of an Order by the Court terminating the right to use Cash Collateral.

7. Nothing contained herein shall be deemed as a waiver by UDX from seeking further or additional adequate protection of its collateral, as applicable, or pursuing any other rights or remedies available to it under law or equity.

8. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior

to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding.

9. The terms of this Order shall be binding upon any Committee (if formed), and upon any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided however, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

10. A further hearing (which may be a final hearing) on this Motion will be held at ____ o'clock a.m. on November ___, 2014, in the Courtroom, U.S. Bankruptcy Court, Durham, NC, at which time the Court will further consider the Motion for Authorization To Use Cash Collateral.

11. Counsel for the Debtors shall serve a copy of this Order upon the Bankruptcy Administrator, the creditors asserting a lien on any property of the estate or an interest in cash collateral, and the creditors holding the 20 largest unsecured claims, and shall file a certificate of such service with the Clerk.

[End of Document]

<u>EXHIBIT A</u>

(Proposed Interim Budget)

To be provided